UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

ROBERT FICZNER,                           )
                                          )
                    *Petitioner*,         )
                                          )
          *vs*.                           )          1:23-cv-01139-JMS-TAB
                                          )
UNITED STATES OF AMERICA,                 )
                                          )
                    *Respondent*.         )

### ORDER DENYING MOTION FOR RELIEF PURSUANT TO 28 U.S.C. § 2255

For the reasons explained in this Order, Petitioner Robert Ficzner's Motion for Relief Pursuant to 28 U.S.C. § 2255 must be **DENIED** and the action **DISMISSED WITH PREJUDICE**. In addition, the Court finds that a certificate of appealability should not issue.

**I.**
**STANDARD OF REVIEW**

A motion pursuant to 28 U.S.C. § 2255 is the presumptive means by which a federal prisoner can challenge his conviction or sentence. *See Davis v. United States*, 417 U.S. 333, 343 (1974). A court may grant relief from a federal conviction or sentence pursuant to § 2255 "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "Relief under this statute is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878-79

1

(7th Cir. 2013) (citing *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996); *Barnickel v. United States*, 113 F.3d 704, 705 (7th Cir. 1997)).

A § 2255 movant claiming ineffective assistance of counsel bears the burden of showing that: (1) counsel's performance fell below objective standards for reasonably effective representation; and (2) this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984); *Resnick v. United States*, 7 F.4th 611, 619 (7th Cir. 2021). If a petitioner cannot establish one of the *Stickland* requirements, the Court need not consider the other. *Groves v. United States*, 755 F.3d 588, 591 (7th Cir. 2014). To satisfy the first requirement of the *Strickland* test, the petitioner must direct the Court to specific acts or omissions of his counsel. *Wyatt v. United States*, 574 F.3d 455, 458 (7th Cir. 2009). The Court must then consider whether in light of all of the circumstances counsel's performance was outside the wide range of professionally competent assistance. *Id.* On the prejudice requirement, a petitioner "must show that 'but for counsel's errors, there is a reasonable probability that the result would have been different.'" *Perrone v. United States*, 889 F.3d 898, 908 (7th Cir. 2018) (quoting *United States v. Graf*, 827 F.3d 581, 584 (7th Cir. 2016)). "In the context of a guilty plea, a petitioner demonstrates prejudice by 'showing that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Perrone*, 889 F.3d at 908 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

## II.
### FACTS AND PROCEDURAL BACKGROUND

### A.      Criminal Proceedings

On October 24, 2022, Mr. Ficzner was charged by Information[1] with one count of Distribution and Receipt of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2).  [Filing No. 23 in *United States v. Robert Ficzner*, 1:22-cr-00161-JMS-KMB-1 (the "Criminal Case").] The offense conduct is described as follows:

> Robert Ficzner…did knowingly distribute child pornography using Telegram, an online chat application, by sending another individual videos that depict minors engaged in sexually explicit conduct.  Ficzner shared child pornography in order to receive more child pornography from the other individual, and he sought child pornography because he was sexually attracted to children.  Ficzner's collection of child pornography included well over 600 images and included depictions of the sexual abuse and exploitation of infants and toddlers, as well as sadistic and masochistic conduct.

[Filing No. 55 in the Criminal Case at 4.]

Also on October 24, 2022, Mr. Ficzner, represented by Samuel Ansell, filed a Petition to Enter Plea of Guilty and Plea Agreement.  [Filing No. 30 in the Criminal Case.]  In the Plea Agreement, signed by Mr. Ficzner, he:

- Acknowledged that he had told his attorney the facts and surrounding circumstances relating to the matters in the Information;

- Acknowledged that he had read the entire Plea Agreement and discussed it with his attorney;

- Acknowledged that he understood all the terms of the Plea Agreement and that those terms correctly reflected the results of plea negotiations;

- Acknowledged that he was "fully satisfied with [his] attorney's representation during all phases of [the] case," and that his attorney had "done all that anyone could do to counsel and assist [him]"; and

---

[1] Subsequently, Mr. Ficzner waived an Indictment and consented to being prosecuted by Information.  [Filing No. 37 in the Criminal Case.]

- Acknowledged that he was "freely and voluntarily pleading guilty."

[Filing No. 30 in the Criminal Case at 22-24.]  In the Plea Agreement, Mr. Ansell certified that he had explained all of the accusations against Mr. Ficzner to him, believed each statement in the Petition to Enter Plea of Guilty and Plea Agreement was accurate and true, and believed that Mr. Ficzner's guilty plea "accord[ed] with [his] understanding of the facts as related to [him] by [Mr. Ficzner] and [was] consistent with [his] advice to [Mr. Ficzner]."  [Filing No. 30 in the Criminal Case at 25.]

The Court held a change of plea and sentencing hearing on February 3, 2023.  [Filing No. 62 in the Criminal Case.]  During the hearing, the following colloquy occurred after Mr. Ficzner was sworn:

THE COURT:  All right.  Do you – can you read and write English well enough to have understood the charge that was filed against you in this case?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And what about the plea agreement you signed, were you able to understand that document?

THE DEFENDANT:  Yes.  I believe I was.

THE COURT:  All right.  Have you, have you – I read your presentence report and other documents submitted for you.  You have been treated for mental illness in the past?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Are you taking medication right now?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Does the medication help you understand, or does it interfere with your ability to understand?

THE DEFENDANT:  I believe it helps.

4

THE COURT:  All right.  And what about substance abuse?  Do you suffer from substance abuse in any way?

THE DEFENDANT:  Just slight alcohol abuse.

THE COURT:  Are you under the influence of any drug, medication, alcohol, or any other substance right now that might interfere with your ability to understand what is happening today?

THE DEFENDANT:  No, Your Honor.

THE COURT:  So the mental health issues you suffer from, Mr. Ficzner, are you suffering from them today in any way that would interfere with your ability to understand what is happening?

THE DEFENDANT:  No, Your Honor.

THE COURT:  All right.  If at any time you don't understand something this morning, you're free to ask me to clarify or to speak privately with your attorney; do you understand?

THE DEFENDANT:  Yes, ma'am.

*          *          *

THE COURT:  Have you fully discussed the charge and the case, in general, with Mr. Ansell, your attorney?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And are you fully satisfied with the counsel, representation, and advice that Mr. Ansell has given you in this case?

THE DEFENDANT:  Truthfully, Your Honor, we haven't actually discussed the plea.  We had a few different opportunities about, like, the [Presentence Investigation Report ("PSR")], but we never actually specifically went through it.

THE COURT:  The plea agreement?

THE DEFENDANT:  Yeah.  I don't know if that was the point where you wanted me to ask about the information?  I am sorry.

THE COURT:  I asked a very general question.  So any concerns that you have, I would like for you to bring to my attention.

THE DEFENDANT:  Okay.  Sorry.

5

THE COURT:  No, no, no.  There is no need to apologize because I was going to ask you whether you reviewed the plea agreement with your attorney, and you did not?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Okay.  Did you have any questions about the plea agreement that you asked Mr. Ansell?

THE DEFENDANT:  I had a, a few pages, a few different questions, just general questions and some things that I just didn't know were – just wanted more information on.  We had a few different meetings, but the plea just wasn't something that we covered.  It was, it was kind of – with the PSR because I don't know how to explain the timeline of it.

THE COURT:  I am sorry.  I didn't understand what you just said, the last thing you said.  Sorry.

THE DEFENDANT:  When I received the plea it was around October?

THE COURT:  Right.

THE DEFENDANT:  But then, the next meeting that we had was kind of more about the PSR was the next meeting.  So the plea questions weren't covered.

THE COURT:  What are the questions that you have?  Let me just ask you.  Would you prefer to proceed at a later date when you can review this with Mr. Ansell and get your questions answered before we go forward?

THE DEFENDANT:  No, Your Honor, actually.  I, I think it is okay.

THE COURT:  Okay.  We are going to go over the agreement in detail in court today, but I really – I am genuinely giving you this opportunity.  If you would prefer to wait so that you can discuss the plea agreement with your attorney, I have to make sure that when you plead guilty you are doing so knowingly and voluntarily.  I believe you're doing it voluntarily.  I need to make sure you are doing it knowingly.

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  So what do you want to do?

THE DEFENDANT:  Proceed.

THE COURT:  Proceed today?

6

THE DEFENDANT:  Yes.

THE COURT:  We will go over the plea agreement, then…. [I]s there anything you want to say, Mr. Ansell?

MR. ANSELL:  No.  I just want to make sure that Mr. Ficzner knows that he doesn't have to be afraid –

THE COURT:  Right.

MR. ANSELL:  – to take you up on your offer.

THE COURT:  Right.  There is no penalty for it.  So it – it is your choice today if you want to proceed or if you want to delay.

THE DEFENDANT:  I, I, I think I would like to proceed.

THE COURT:  Okay.  Then, we will proceed.

[Filing No. 70 in the Criminal Case at 5-10.]  The Court reviewed the Plea Agreement with Mr. Ficzner and he acknowledged that he understood each provision.  [Filing No. 70 in the Criminal Case at 13-43.]  The Court specifically went over the calculation of Mr. Ficzner's criminal history points, and the following exchange occurred:

THE COURT:  All right.  So the second aspect of your plea agreement – or of the guideline calculation, I apologize.  The second portion of the guideline calculation is based upon your criminal history, and there is a juvenile adjudication for attempted murder in Paragraph 40.  But it is a juvenile adjudication.  It is quite old, and so no points are assessed for that conduct; do you understand?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  There is a burglary conviction from 2015 referenced in Paragraph 41.  One point is assessed; do you understand?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  So the guideline calculation at a criminal history category I – I am sorry, at an offense level 37, criminal history category I, is as follows:  The guidelines provide for a term of imprisonment of 210 to 240 months.  They provide for a term of supervised release of five years to life.  The guidelines called for a fine of between [$]40,000 and $250,000.  The guidelines call for restitution.  They call for the special assessment of $100.  The guidelines would call for the JVTA

assessment of $5,000 and the child pornography assessment of up to $35,000; do you understand?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  Counsel, do you agree that is the correct guideline calculation, Ms. Korobov?

MS. KOROBOV:  Yes, Your Honor.

THE COURT:  And Mr. Ansell?

MR. ANSELL:  Yes, Your Honor.

THE COURT:  So Mr. Ficzner, we talked before about – do you have any questions about your guidelines?

THE DEFENDANT:  No, Your Honor.

[Filing No. 70 in the Criminal Case at 35-36.]

After reviewing the Plea Agreement, the Court asked some follow-up questions related to

Mr. Ficzner's understanding.

THE COURT:  Now, before you mentioned that you had some questions about the plea agreement.  Do you believe that you have been adequately advised in this case about your plea and the sentence possibilities?

THE DEFENDANT:  Yes, Your Honor.

\*          \*          \*

THE COURT:  You say in Paragraph 34B that you have told your attorney the facts and circumstances as known to you concerning the matters mentioned in the information, and you believe and feel your attorney is fully informed as to all such matters.  That your attorney has since informed, counseled, and advised you as to the nature and cause of every accusation against you and any possible defenses you might have.  Do you stand by that statement?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  You said in Paragraph 34C that you have read the entre plea agreement and discussed it with your attorney.  Now, that is a little inconsistent than what we talked about at the beginning of the hearing, but after we have reviewed the document, do you believe that you understand the plea agreement in total?

8

THE DEFENDANT:  Yes, I do, Your Honor.

THE COURT: All right.  And you say, again, in Paragraph 34D that you understand all the terms of the plea agreement, and those terms correctly reflect the results of plea negotiations; is that correct?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  I've asked you the questions that are in Paragraph 34E. We have already discussed that.  You said in Paragraph 34F I am fully satisfied with my attorney's representation during all phases of this case.  My attorney has done all that anyone could do to counsel and assist me, and I fully understand the proceedings in this case against me.  What is your position on that statement at this time?

THE DEFENDANT:  I do believe that my attorney did his, his best, along with the mitigator that was provided him.

*          *          *

THE COURT:  Do you understand that the offense to which you are pleading guilty is a felony, and if your plea is accepted, you will be adjudged guilty of that offense. That adjudication may deprive you of valuable civil rights such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess any type of firearm; do you understand?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  So Mr. Ficzner, do you believe you understand the possible consequences of your plea and plea agreement that we have just discussed?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you have any other questions about the plea agreement or pleading guilty?

THE DEFENDANT:  No, Your Honor.

[Filing No. 70 in the Criminal Case at 38-45.]  After Mr. Ficzner pled guilty to one count of Distribution and Receipt of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2), the Court stated:

It is the finding of the Court in the case of the United States v. Robert Ficzner, that the Defendant is fully competent and capable of entering an informed plea, that he is aware of the nature of the charge and the consequences of the plea, that his plea of guilty is a knowing and voluntary plea, supported by an independent basis in fact, containing each of the essential elements of the offense. The plea is, therefore, accepted, and the Defendant is now adjudged guilty of Count I.

[Filing No. 70 in the Criminal Case at 45-46.]  The Court sentenced Mr. Ficzner to 156 months' imprisonment, followed by 15 years of supervised release.  [Filing No. 66 in the Criminal Case at 2-3.]

**B.      2255 Proceedings**

On June 15, 2023, Mr. Ficzner filed a Motion to Vacate in the Criminal Case in which he stated:

> I want to explain further as to exactly what I said in the courtroom on sentencing. I know I was under oath and nothing I said was a lie.  When you asked me about how my lawyer's performance was, I told you that we never reviewed my plea. That was 100% the truth.  I should have known how my relationship with [Mr. Ansell] was from the first day I met him, and him calling me a "horrible person and a monster."  I have records of texts messages from him, where I asked a multitude of questions.  A majority of my questions were either ignored or avoided.  I even specifically asked when we were going to have a meeting to discuss my plea before I signed it because I had a lot of questions, and his only response was to sign it immediately and he will set it up.  I was rushed to sign it because he told me if I didn't then more charges would be pursued by the prosecutor per my attorney.  I was backed into a corner with no choice but to try and trust my attorney.  As time went on I grew more frustrated as he continued…to not answer my questions and continued to be late to meetings via Zoom or one of my court appearances.  I am in no way attempting to shift blame or make it seem as though I shouldn't have gotten the sentence I [received].  I only feel bad that the quality of lawyer I [received] was inadequate and hopefully the next defendant will have a better lawyer.  I never [received] a letter saying he was no longer my attorney like all other sentenced defendants have [received].  I have been sentenced over 4 months and have been waiting to be transfer[r]ed, so I want to make sure nothing is wrong with my case? I just want to get started with my treatment and healing as soon as possible.

[Filing No. 68 in the Criminal Case.]

The Court determined that Mr. Ficzner's Motion to Vacate should be treated as a motion seeking relief pursuant to 28 U.S.C. § 2255 and instructed the Clerk to open this civil case.  [Filing

10

No. 69 in the Criminal Case.]  The Court then provided Mr. Ficzner with notice in this case under *Castro v. United States*, 540 U.S. 375, 383 (2003), that his Motion to Vacate in the Criminal Case would be treated as a § 2255 motion, and gave him an opportunity to withdraw or amend the § 2255 motion.  [Filing No. 3.]  Mr. Ficzner chose to amend his § 2255 motion, [Filing No. 5], and the Government filed a response, [Filing No. 10].  Mr. Ficzner did not file a reply[2] and the motion is now ripe for the Court's decision.

### III.
#### DISCUSSION

In support of his § 2255 motion, Mr. Ficzner argues that Mr. Ansell was ineffective for four reasons: (1) Mr. Ansell allegedly did not review the Plea Agreement with Mr. Ficzner; (2) Mr. Ansell allegedly called him a "monster" and a "horrible person," which showed "prejudice or a negative opinion" of Mr. Ficzner; (3) Mr. Ansell allegedly was unprepared, late to meetings and Court appearances, and failed to answer Mr. Ficzner's questions; and (4) Mr. Ansell allegedly did not object to Mr. Ficzner's criminal history points calculation.  [Filing No. 5.]  The Court considers whether Mr. Ficzner has met the *Strickland* requirements in connection with each of his arguments.

### A.      Failure to Review Plea Agreement

In support of his § 2255 motion, Mr. Ficzner argues:

> My attorney Harold Samuel Ansell was asked many times via text or phone call and Zoom, to review the plea given to me.  I was given the plea and told to sign it before the government brings more charges.  He informed me that he will answer any of my questions after I signed.  I only had maybe 1 or 2 days once [received] before the "extension to file charges."  Even after a meeting reviewing my P.S.R. and the errors in it, he still never reviewed or answered any of my questions over my plea.

---

[2] The Court ordered Mr. Ficzner to file any reply within 28 days of the filing of the Government's response, [Filing No. 6 at 1], and the Government ultimately filed its response on May 15, 2024, [Filing No. 10].  To date, Mr. Ficzner has not filed a reply.

11

[Filing No. 5 at 4.]

In its response, the Government notes that Mr. Ficzner does not argue that he would not have pleaded guilty if Mr. Ansell had explained the terms of the Plea Agreement more thoroughly before the plea and sentencing hearing and does not identify specific questions he had that Mr. Ansell did not answer. [Filing No. 10 at 13.] It argues that the Court discussed the terms of the Plea Agreement "at length" with Mr. Ficzner and "even gave [him] the opportunity to continue the hearing to another day so that he could discuss the plea more fully with counsel and reiterated to [Mr.] Ficzner (at his counsel's suggestion) that he should not be afraid to continue the hearing if he desired and that there would be no penalty for doing so." [Filing No. 10 at 13.] The Government asserts that Mr. Ficzner "explicitly and repeatedly declined the invitation" and "confirmed several times throughout the proceeding that he understood the terms of his plea and sentencing and that he had no further questions," and that the Court "confirmed that he understood the possible consequences of his plea and plea agreement and that he had no other questions." [Filing No. 10 at 13.] The Government argues that even if the Court finds that Mr. Ficzner was not counseled regarding the terms of his Plea Agreement prior to the plea and sentencing hearing, and that this failure constituted objectively unreasonable performance, the record shows that Mr. Ficzner "understood the terms and consequences of his plea and plea agreement and that he suffered no prejudice from any alleged failure to discuss the plea prior to the hearing." [Filing No. 10 at 13-14.]

Even if the Court finds that Mr. Ansell did not discuss the specific terms of the Plea Agreement with Mr. Ficzner before the plea and sentencing hearing, the record reflects that the Court gave Mr. Ficzner at least three chances to continue the hearing so that he could have more time to consult with Mr. Ansell regarding the Plea Agreement. Additionally, Mr. Ansell reiterated

12

that the plea and sentencing hearing could be postponed so that he and Mr. Ficzner could discuss the Plea Agreement further. At each turn, Mr. Ficzner declined the opportunity to postpone the plea and sentencing hearing and stated that he wanted to proceed.

Moreover, the Court went over each provision of the Plea Agreement at the plea and sentencing hearing and Mr. Ficzner acknowledged that he understood each provision. He also stated that he believed he was adequately advised about the plea and sentencing possibilities and understood the Plea Agreement in total. Additionally, he stated that he was satisfied with Mr. Ansell's representation during all phases of the case. His statements to the Court are given a "strong presumption of verity." *United States v. Silva*, 122 F.3d 412, 415 (7th Cir. 1997) (quotation and citation omitted); *see also United States v. Stewart*, 198 F.3d 984, 987 (7th Cir. 1999) ("Entry of a plea is not some empty ceremony, and statements made to a federal judge in open court are not trifles that defendants may elect to disregard….[W]hen the judge credits the defendant's statements in open court, the game is over."). In sum, even if Mr. Ansell had not thoroughly reviewed the Plea Agreement with Mr. Ficzner before the plea and sentencing hearing, Mr. Ficzner knowingly elected to proceed with the hearing anyway and acknowledged his understanding of each provision of the Plea Agreement when the Court reviewed those provisions with him.

The Court also notes that Mr. Ficzner generally states that Mr. Ansell did not answer his questions, but does not identify what those questions were or how they affected his willingness to plead guilty. Because Mr. Ficzner has not developed his argument regarding unanswered questions, it is waived. *See M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.").

13

Courts must "not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Lee v. United States*, 582 U.S. 357, 369 (2017). Instead, they "look to contemporaneous evidence to substantiate a defendant's expressed preferences" and only allow a withdrawal if they are convinced that the defendant would have pleaded differently. *Id.* Significantly, Mr. Ficzner does not argue that he would not have pled guilty if Mr. Ansell had reviewed the Plea Agreement with him before the plea and sentencing hearing. He has not shown that there was a reasonable probability that if Mr. Ansell had reviewed the Plea Agreement before the plea and sentencing hearing, "he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

Mr. Ficzner has failed to establish the prejudice element for an ineffective assistance of counsel claim related to Mr. Ansell's failure to review the Plea Agreement with him and answer his questions before the plea and sentencing hearing.

## B.    Name-Calling

Mr. Ficzner argues in support of his § 2255 motion as follows:

> Upon first meeting my court appointed attorney he began to namecall me, calling me a "monster" and a "horrible person." Thus showing prejudice or a negative opinion of me.

[Filing No. 5 at 5.]

In its response, the Government argues that Mr. Ficzner does not provide any evidence that Mr. Ansell actually called him these names but, in any event, Mr. Ficzner has not shown that he suffered any prejudice. [Filing No. 10 at 14.] It asserts that Mr. Ficzner does not argue that the name-calling "impacted his decision to plead guilty or that, absent the exchange, he would not have plead guilty and would have insisted on going to trial." [Filing No. 10 at 14.] It contends that Mr. Ficzner also does not argue that but for the name-calling the proceeding would have been

different, or that the exchange was witnessed by the Court such that it would have impacted a Court decision or proceeding.  [Filing No. 10 at 14.]

Mr. Ficzner's argument related to alleged name-calling is undeveloped.  He does not provide any details regarding how the alleged name-calling impacted his case, including how it affected his decision to plead guilty or otherwise played a role in the outcome of the proceedings. His argument is waived because it is undeveloped.  *See M.G. Skinner & Assocs. Ins. Agency, Inc., 845 F.3d at 321*; *Riley v. City of Kokomo*, 909 F.3d 182, 190 (7th Cir. 2018) ("It is not the obligation of th[e] court to research and construct the legal arguments open to parties.") (quotation and citation omitted).  And he has not shown that any name-calling prejudiced him in any event.

Mr. Ficzner has not shown that Mr. Ansell provided ineffective assistance of counsel by allegedly calling him a "monster" and a "horrible person."

### C.    Lack of Preparation, Tardiness, and Failure to Answer Questions

Mr. Ficzner states in support of his § 2255 motion:

> Mr. Ansell has shown his unpreparedness by being late numerous times to Zoom meetings, Court appearances, and my P.S.R. meeting.  Also showing his unpreparedness by not answering my questions via text or avoiding and answering other questions.  Mr. Ansell admitted he did not review the evidence, search warrants, bodycam footage or my Miranda rights question.  Also at sentencing he was still typing his opening statements and arguments in my defen[s]e, while the prosecutor was giving their speech.

[Filing No. 5 at 7.]

The Government asserts in its response that Mr. Ficzner has not shown how Mr. Ansell's alleged tardiness or lack of preparation prejudiced him, "points to no repercussions from the Court (or others) based on late arrivals or lack of preparation," and "does [not] specifically allege questions that went unanswered."  [Filing No. 10 at 16.]  It notes that Mr. Ficzner does not "assert

what any additional investigation into the evidence or potential defenses would have produced."
[Filing No. 10 at 16.]

Again, Mr. Ficzner fails to satisfy the prejudice requirement set forth in *Strickland*. He does not show, or even argue, that Mr. Ansell's alleged tardiness to meetings or Court appearances prejudiced him in any way. He also does not identify what questions he had that Mr. Ansell failed to answer and how that failure prejudiced him. Further, he does not explain what any additional investigation into the evidence, search warrants, bodycam footage or his "Miranda rights question" could have uncovered and how it would have changed the outcome of the case. *See Hill*, 474 U.S. at 59 (The prejudice inquiry into counsel's failure to investigate "will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea."); *Long v. United States*, 847 F.3d 916, 920 (7th Cir. 2017) ("[W]hen [counsel's] purported deficiency is based on a failure to investigate, we require the petitioner to allege what the investigation would have produced.") (quotation and citation omitted). Finally, Mr. Ficzner does not show, or even argue, that Mr. Ansell's alleged preparation of his opening statement and argument during the plea and sentencing hearing affected his sentence.

In short, Mr. Ficzner has not established the prejudice element of an ineffective assistance of counsel claim related to Mr. Ansell's alleged tardiness to meetings and Court appearances, failure to answer Mr. Ficzner's questions, failure to investigate, or preparation of his opening statement and argument during the plea and sentencing hearing.

### D.      Failure to Object to Criminal History Point Calculation

Finally, Mr. Ficzner argues in support of his § 2255 motion:

I informed Mr. Ansell by my own legal research that I should have 0 criminal history points, as my adult burglary case does not apply. After being told this, he ignored me and said it doesn't matter.

[Filing No. 5 at 8.]

The Government argues in its response that the Court went over Mr. Ficzner's criminal history and his resulting criminal history points and category during the plea and sentencing hearing, and Mr. Ficzner twice confirmed that he understood the calculation. [Filing No. 10 at 17.] It asserts that Mr. Ficzner does not show that a failure to object to the calculation was error, or why his prior burglary conviction should not have counted toward his criminal history points, and that his criminal history calculation was correct in any event. [Filing No. 10 at 17-18.] The Government notes that even without one criminal history point, Mr. Ficzner would have been in the same criminal history category so his sentencing guidelines calculation would have been the same. [Filing No. 10 at 18.] It contends that he would not have been eligible for an adjustment based on being a zero-point offender because he was convicted of a sex offense. [Filing No. 10 at 18.]

Mr. Ficzner's argument regarding his criminal history points is undeveloped. He does not explain why his burglary conviction should not have resulted in one criminal history point and how, even if that was the case, a miscalculation would have affected his sentence. This failure to develop his argument constitutes waiver. *M.G. Skinner & Assocs. Ins. Agency, Inc.*, 845 F.3d at 321. But in any event, Mr. Ficzner's prior burglary conviction, which resulted in 34 days' imprisonment, was properly considered and one criminal history point was correctly added to his sentencing guidelines calculation. *See* U.S.S.G. § 4A1.1(a)-(c) (providing that one criminal history point is added for any prior sentence not exceeding one year and one month (for which 3 points are added) or at least sixty days (for which 2 points are added)). And that single criminal history point still resulted in a criminal history category of I, [*see* Filing No. 55 in the Criminal

17

Case at 11], which is the lowest level and the same level he would have been in with zero criminal history points.

Further, during the plea and sentencing hearing the Court went over the criminal history calculation and the fact that the burglary conviction resulted in one criminal history point, and Mr. Ficzner stated that he understood the calculation and did not have any questions. [Filing No. 70 in the Criminal Case at 35-36.] The Court finds Mr. Ficzner's acknowledgment regarding the accuracy of the criminal history points calculation significant. *See Stewart*, 198 F.3d at 987 ("[S]tatements made to a federal judge in open court are not trifles that defendants may elect to disregard.").

Mr. Ficzner has not shown that Mr. Ansell's failure to object to the criminal history point calculation constituted ineffective assistance of counsel and he is not entitled to relief on that basis.

## IV.
### CONCLUSION

For the reasons explained in this Order, Mr. Ficzner is not entitled to relief on his § 2255 motion. He did not receive ineffective assistance of counsel in connection with any of the grounds that he raises. Moreover, Mr. Ficzner's factual claims would not warrant relief, or they lack sufficient detail to warrant holding an evidentiary hearing to resolve them.

Accordingly, Mr. Ficzner's Motion for Relief Pursuant to 28 U.S.C. § 2255, [2], is **DENIED** and this action is **DISMISSED WITH PREJUDICE**. Judgment consistent with this Order shall now issue and the Clerk shall docket a copy of this Order in the Criminal Case (1:22-cr-00161-JMS-KMB-1). The Motion to Vacate, [Filing No. 68 in the Criminal Case (1:22-cr-00161-JMS-KMB-1)], shall also be **TERMINATED** in the underlying criminal action.

**V.**

**DENIAL OF CERTIFICATE OF APPEALABILITY**

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition. Rather, he must first request a certificate of appealability. *See Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003); *Peterson v. Douma*, 751 F.3d 524, 528 (7th Cir. 2014). Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2255 Proceedings, and 28 U.S.C. § 2253(c), the Court finds that Mr. Ficzner has failed to show that reasonable jurists would find it "debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). The Court therefore **DENIES** a certificate of appealability.

Date: 3/27/2026

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

**Distribution via U.S. Mail to:**

Robert Ficzner
#94877-509
FCI Ashland
Federal Correctional Institution
P.O. Box 6001
Ashland, KY 41105